UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GLENN J. FEDERICO,

                                        Plaintiff,

                                                                Case # 19-CV-6098-FPG

v.

                                                                DECISION AND ORDER

FEDERAL EXPRESS,

                                        Defendant.

## INTRODUCTION

*Pro se* Plaintiff Glenn J. Federico brings this employment discrimination action against his former employer, Defendant Federal Express ("FedEx"), alleging that FedEx discriminated on the basis of age when it terminated him, in violation of the Age Discrimination in Employment Act ("ADEA"), and failed to provide reasonable accommodations, in violation of the Americans with Disability Act ("ADA"). ECF Nos. 1, 15. FedEx now moves for summary judgment on all claims. ECF No. 35. Federico opposes the motion, ECF Nos. 37, 38, and FedEx has filed its reply. ECF No. 39. For the reasons that follow, FedEx's motion is GRANTED.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable

1

to the non-moving party and draws all reasonable inferences in the non-moving party's favor.  *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).  However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation."  *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

## BACKGROUND

In 1997, Federico began working at a FedEx location in Rochester, initially as a "Part-Time Casual Handler."  ECF No. 35-1 ¶ 1.  In 2001, Federico was promoted to the position of "Permanent Part-Time Material Handler," which he held until his termination in March 2016.  ECF No. 35-2 at 18-19.  As a general matter, Federico's position required him to load and offload packages and containers from one vehicle to another—whether that be tractor-trailers, airplanes, or delivery trucks.  *See id.* at 19-20, 119.  Federico testified that this was a physically demanding job that involved lifting heavy packages and materials.  *Id.* at 20-21.  Federico needed to be able to lift and maneuver 75 pounds.  *Id.* at 23, 119.

During his tenure, Federico was granted four "Medical Leaves of Absence."  ECF No. 35-1 ¶ 10.  Under FedEx's policies at the time, an employee could take up to 365 days of medical leave before his employment would be terminated.  *Id.* ¶ 20.  FedEx would hold the employee's position for the first 90 days of medical leave, after which it "may be necessary to replace or eliminate [the] position based upon operational necessity."  ECF No. 35-2 at 63, 132.  After the first 90 days, the employee could receive "preferential treatment for lateral or lower level positions for which he was qualified to perform with or without reasonable accommodation."  ECF No. 35-1 ¶ 20.  In either case, the employee could not return to work without a release from a treating physician.  *Id.* ¶¶ 20, 21.  Although an employee could return to work in a limited capacity if

permitted by his treating physician, any such work was limited to 90 days and would also count towards the maximum medical leave. *Id.* ¶¶ 21, 23.

Federico does not dispute that FedEx enforced, and he followed, these protocols with respect to his first three instances of medical leave: he received medical leave, returned to work in a limited capacity after providing a release from his doctor, and then fully returned to work after providing another release. *Id.* ¶¶ 11-13; *see also* ECF Nos. 37, 38.

Federico's fourth medical leave began in February 2015, after he had injured his neck, right arm, and right shoulder. *See* ECF No. 35-2 at 45-46. Federico testified that he was so weak that he could "not even hold a package," and a physician confirmed that he was unable to work. *Id.* at 46, 51, 144. Federico underwent surgery in April 2015, and informed FedEx that he would be on leave at least until May 2015, when his postoperative appointment was scheduled. *Id.* at 61, 163. When Federico's medical leave continued beyond 90 days due to his continuing incapacity to work, FedEx informed him, in accordance with its policies, that it "may be necessary to replace or eliminate your position." *Id.* at 63. Despite this warning, Federico's position was not eliminated and he was not replaced. *Id.* at 64. Federico remained out of work pursuant to his doctor's recommendations for the next several months. *Id.* at 65-67. In December 2015, he notified FedEx that his doctor had determined that he remained unable to work at least until March 1, 2016. ECF No. 35-2 at 67. Federico was notified that his medical leave would expire on March 7, 2016, and that he would be terminated unless he was released to full duty and secured a new position by that date. *Id.* at 69, 72, 173. The letter he received warned that Federico was "responsible for actively pursuing positions of interest to [him]" and encouraged him to "begin [his] job search activities as soon as possible if [he were] interested in returning to work for FedEx." *Id.* at 72, 173.

Federico concedes that he was aware of these policies and what he was required to do in order to retain his employment at FedEx. *Id.* at 72. He also concedes that he never provided a release from his physician confirming that he could return to work on a fulltime basis. *Id.* at 72-73. At his deposition, he explained that there was no position available to him at the Rochester location, *id.* at 83-84, 87, let alone one that he could perform in light of his physical impairments at the time. *Id.* at 73, 74-75. Instead, Federico tried to pitch to several managers the idea of creating a new "support" position, where he could assist in various areas that were not physically demanding. *See* ECF No. 35-2 at 80, 84, 114. His idea was not accepted, though Federico alleges that management did not work with him to create an arrangement that would be acceptable. *Id.* at 77-78, 84, 87, 88-89. On March 14, 2016, Federico was terminated. *Id.* at 86. By his own admission, Federico has been "unable to work" since his termination, affirming that he is "totally disabled." *Id.* at 8-9, 12. Federico testified that he is unable to work as a bookkeeper because he is right-handed and cannot perform even minor physical actions like moving file boxes, putting files together, and disposing of paperwork. *Id.* at 9. At most, he could do "paperwork" and "filing." *Id.* at 77.

In February 2017, Federico filed a charge of discrimination based on age and disability with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 197. In November 2018, the EEOC issued a right-to-sue letter to Federico. ECF No. 15 at 11. In February 2019, Federico filed the present action. ECF No. 1. Reading the complaint liberally, the Court understands Federico to be raising three claims: (1) disability discrimination under the ADA; (2) failure to accommodate under the ADA; and (3) age discrimination under the ADEA. ECF No. 15 at 4.

4

**DISCUSSION**

FedEx moves for summary judgment, arguing on several grounds that Federico is unable to provide sufficient evidence to support his ADA and ADEA claims. *See generally* ECF No. 35-3. Because they are dispositive, the Court need only address two of FedEx's arguments.

On Federico's ADA claims, FedEx contends that there is insufficient evidence that Federico could perform the essential functions of his position with or without a reasonable accommodation. The Court agrees.

To establish a *prima facie* case of disability discrimination or failure to accommodate under the ADA, the plaintiff must show that he "was qualified to perform the essential functions of the job, with or without reasonable accommodation." *Berger v. N.Y.C. Police Dep't*, 304 F. Supp. 3d 360, 367 (S.D.N.Y. 2018) (disability discrimination claim); *see also id.* at 369 (same for failure-to-accommodate claim). The plaintiff "bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [him] to perform the essential functions of [his] employment." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009). "In the context of the ADA, reasonable accommodation may include, *inter alia*, modification of job duties and schedules, alteration of the facilities in which a job is performed, acquisition of devices to assist the performance of job duties, and, under certain circumstances, reassignment to a vacant position." *Id.* (internal quotation marks omitted).

In this case, Federico has not identified the existence of any accommodation that would have "allow[ed] [him] to perform the essential functions of [his] employment." *McBride*, 583 F.3d at 97. Federico concedes that he could not perform his pre-injury job as a material handler. *See* ECF No. 35-2 at 8-9, 77, 82, 119. In his briefing, he does not suggest any accommodation that would have allowed him to perform that job; indeed, given that he cannot even lift file boxes due

to the limited capacity in his right arm, it is difficult to imagine any accommodation that would have allowed Federico to perform a job primarily involving lifting and moving packages. *See id.* at 8, 9, 119. Although Federico lobbied for a less strenuous position before his termination, he also concedes that no such vacancy actually existed. *See id.* at 82-83; *see also McBride*, 583 at 97-98 (stating that the employee "must demonstrate the existence, at or around the time when accommodation was sought, of an existing vacant position to which [he] could have been reassigned").

The only accommodation Federico identifies is the creation of a new position, wherein he could float between departments and help out as needed. *See* ECF No. 35-2 at 84, 114-15. The Second Circuit has made clear, however, that "an employer need not reassign an employee if no position is vacant" and is not obliged "to create a new position to accommodate the employee." *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 99 (2d Cir. 1999). Therefore, FedEx was not obliged to create a new position for Federico that matched his abilities.

Nevertheless, Federico argues that the new position he envisioned was reasonable in light of FedEx's past accommodation practices with respect to other, younger material handlers. *See* ECF No. 15 at 13-14; ECF No. 35-2 at 80 (arguing that FedEx had "set [a] precedent" based on their prior accommodations). First, one material handler was injured in a motorcycle accident that rendered his legs paralyzed; FedEx moved him to an office where he performed office work. ECF No. 35-2 at 103-04. Second, another material handler was injured in a car accident that caused memory difficulties and physical impairments; FedEx limited his job responsibilities to driving vehicles and moving containers. *Id.* at 107. Third, one employee broke both her arms; FedEx reduced her duties and then transferred her to a different position. *Id.* at 110. Fourth, another

material handler had a fear of heights, which FedEx accommodated by limiting his duties.  ECF
No. 15 at 13.

Because none of these employees' circumstances is similar to Federico's, the Court cannot
accept his reasoning.  *See Garvey v. Sullivan*, 773 F. App'x 634, 637 (2d Cir. 2019) (summary
order) (rejecting claim that accommodation was consistent with his employer's "past practices,"
where other employees' situations were "not comparable" to the plaintiff's); *see also Mannan v.
Colorado*, 841 F. App'x 61, 71 (10th Cir. 2020).  To be sure, these instances may prove that FedEx
was oftentimes liberal in the accommodations it provided to disabled employees.   But those
accommodations are not analogous to Federico's request: they involved either accommodations
related to a particular, existing job (in the case of the second and fourth employees) or, essentially,
transfers to different positions (in the case of the first and third employees).  At least based on the
evidence before the Court, none involves the sort of amalgamation of duties across several
departments that Federico envisioned.  *See* ECF No. 35-2 at 84, 114.  Plus, Federico offers no
evidence to show that his requested role would have even been possible at the time he requested
it.  *See Jackan v. N.Y.S. Dep't of Labor*, 205 F.3d 562, 566-67 (2d Cir. 2000) ("The burden of
persuasion on the 'existence' of an 'effective accommodation' is not satisfied by mere
speculation.").  The fact that, years before, FedEx had been able to assign different work to injured
employees does not, standing alone, demonstrate that such work existed for Federico at the time
of his request.  *Cf. Kaganovich v. McDonough*, No. 18-CV-2517, 2021 WL 2908191, at *7
(E.D.N.Y. July 2, 2021) ("That [the employer] had suitable, if unposted, vacancies at the time
others requested transfer does not mean it had one for [the plaintiff]. . . .  [T]he burden remains
with [the plaintiff to] go beyond this 'mere speculation' and identify a specific vacancy for which
he was qualified at the relevant time.").

Accordingly, because Federico has failed to meet his burden of proving that he could perform the essential functions of his job with or without a reasonable accommodation, his ADA claims fail.[1]

As for the ADEA claim, FedEx argues, and the Court agrees, that there is insufficient evidence that FedEx's treatment of Federico's disabilities and its termination of his employment "occurred under circumstances giving rise to an inference of discrimination." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (listing essential elements of a *prima facie* case of age discrimination under the ADEA). "A plaintiff can raise an inference of age discrimination by showing that [he] (1) was similarly situated to other younger employees, and (2) was treated less favorably than those employees." *Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 21 (E.D.N.Y. 2015). Comparators need not be identical to the plaintiff, "only similarly situated in all material respects." *Id.* (internal quotation marks omitted). "Those material respects will vary somewhat from case to case, and the relevant factors are whether the plaintiff and potential comparator were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Id.* (internal quotation marks and brackets omitted).

Here, Federico has not presented enough evidence to show that the younger employees whom he identifies are adequate comparators. Although Federico believes that FedEx's management was more willing to make efforts to accommodate younger employees, *see, e.g.*, ECF No. 35-2 at 86, he admitted at his deposition that he had little personal knowledge of the circumstances that led to those employees' accommodations. *Id.* at 100-12; *see also Cooper v.*

---

[1] Much of Federico's criticism of FedEx is directed at its alleged failure to help him craft some sort of arrangement that would allow him to continue to work. *See* ECF No. 35-2 at 78-79, 86, 88-89. Although the ADA envisions an "interactive process by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated," *McBride*, 583 F.3d at 99 (internal quotation marks omitted), "there is no valid independent claim under the ADA for failure to engage in an interactive process." *Sheng v. M&T Bank Corp.*, 848 F.3d 78, 87 (2d Cir. 2017).

*Morgenthau*, No. 99-CV-11946, 2001 WL 868003, at *7 (S.D.N.Y. July 31, 2001) (a plaintiff's "subjective feelings" that she was treated differently than another employee outside the protected class is insufficient to establish that the two were, in fact, "similarly situated in all material respects"). Furthermore, as stated above, the record evidence indicates that the accommodations those employees received are not comparable to Federico's request. There is additionally no evidence that Federico's envisioned role was actually feasible at the time he requested it. As such, there is no basis to infer that FedEx could have given Federico his preferred accommodation just as it had given those younger employees liberal accommodations years earlier. For all of these reasons, Federico has failed to show that the younger disabled employees were in the same position as he was when he requested his accommodation. Because Federico does not otherwise provide evidence to establish that his allegedly unfair treatment and termination "occurred under circumstances giving rise to an inference of discrimination,"[2] summary judgment on the ADEA claim is appropriate. *Bucalo*, 691 F.3d at 129.

---

[2] In one of his filings, Federico lists other events "that have taken place where [he] was denied opportunities to advance in Fedex," which he now attributes to age and gender discrimination. ECF No. 9 at 2. These allegations cannot resuscitate his ADEA claim. The incidents he cites are entirely conclusory and bereft of any detail that would permit a reasonable inference that these cited employees were, in fact, "similarly situated in all material respects." *Arroyo v. Hartford Bd. of Educ.*, No. 17-CV-2067, 2019 WL 6350629, at *9 (D. Conn. Nov. 27, 2019); *cf. Jones v. Western Suffolk Boces*, No. 03-CV-3252, 2008 WL 495498, at *11 (E.D.N.Y. Feb. 20, 2008) ("Although plaintiff asserts that white social workers with less seniority and experience were provided summer employment while he was not, plaintiff does not . . . provide any evidence whatsoever to substantiate his conclusory allegation."). It is well-established that a "plaintiff's *pro se* status does not allow him to rely on conclusory allegations or unsubstantiated speculation to overcome a motion for summary judgment." *Jones*, 2008 WL 495498, at *3.

## CONCLUSION

For the reasons discussed above, FedEx's motion for summary judgment (ECF No. 35) is GRANTED.   The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment in FedEx's favor and close this case.

IT IS SO ORDERED.

Dated: October 15, 2021
    Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York